UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:15-cv-00110-JHM

SUNSHINE HEIFERS, LLC                                                          APPELLANT

V.

LEE H. PURDY and                                                               APPELLEES
CITIZENS FIRST BANK

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon an appeal from Bankruptcy Court of the Western District of Kentucky [DN 7]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

The relevant facts of this case have been set forth in the opinion of Bankruptcy Court for the Western District of Kentucky, In re Purdy, No. 12-11592(1)(12), 2015 WL 5176580, at *6 (Bankr. W.D. Ky. Sept. 2, 2015), and there is no need to fully repeat them here. Briefly, this case involves the competing interests of Sunshine Heifers LLC, (hereinafter "Sunshine"), which leased cattle to Lee Purdy (hereinafter "Purdy"), and Citizens First Bank (hereinafter "CFB"), which had a security interest in "all . . . Chattel Paper, Accounts, Equipment, Farm Products, Livestock including increase and supplies . . . currently owned or hereafter acquired" by Purdy. Id. Purdy filed bankruptcy and the cattle remaining in his possession were auctioned. Both Sunshine and CFB claim the auction proceeds.

Initially, the Bankruptcy Court determined that the Dairy Cow Leases were in fact disguised security agreements and were subject to CFB's first filed security interest. In re Purdy, 490 B.R. 530, 540 (Bankr. W.D. Ky. 2013), aff'd sub nom. Sunshine Heifers, LLC v. Purdy, No. 1:13CV-00049-JHM, 2013 WL 5407045 (W.D. Ky. Sept. 25, 2013), rev'd and remanded sub

nom. In re Purdy, 763 F.3d 513 (6th Cir. 2014). This Court affirmed the bankruptcy court's determination. Sunshine Heifers, 2013 WL 5407045, at *8. The Sixth Circuit, however, reversed the decision, finding that the Dairy Cow Leases were in fact true leases, not disguised security agreements. In re Purdy, 763 F.3d at 521. The Sixth Circuit remanded the case to the bankruptcy court "for further proceedings consistent with this opinion." Id.

Upon remand, the Bankruptcy Court determined that even though the Dairy Cow Leases were true leases, CFB's security interest attached to all of the cattle delivered to Purdy's farm because all "cattle were delivered to Purdy, incorporated into his operation and were being fed, cared for and producing milk before Sunshine even had a signed lease with the Purdy." In re Purdy, 2015 WL 5176580, at *12. Furthermore, the Bankruptcy Court concluded that Sunshine did not own any of the cattle at the time of the auction. Id. at *14. Sunshine now appeals that decision.

## II. STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's finding of fact under a clearly erroneous standard, but reviews de novo the bankruptcy court's conclusions of law. Nicholson v. Isaacman (In re Isaacman), 26 F.3d 629, 631 (6th Cir. 1994). A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Kalamazoo River Study Group v. Rockwell Intern. Corp., 274 F.3d 1043, 1047 (6th Cir. 2001).

**III. DISCUSSION**

Sunshine challenges several of the Bankruptcy Court's conclusions of law including its decision to reopen the issue of ownership, its determination that the branding statute does not apply in this case, its decision that CFB's security interest attached to all cattle, and the ruling that all proceeds from the auction belong to CFB rather than Sunshine based on the proof and evidence presented. Accordingly, the Court will address these arguments below.

**A. The Sixth Circuit's Decision Regarding Ownership of the Cattle**

Sunshine first argues that the Bankruptcy Court erred when it decided to take testimony to determine the ownership of the cattle sold at the auction. Sunshine argues that the Sixth Circuit determined ownership of the cattle and the Bankruptcy Court violated the "mandate rule" by re-trying the issue on remand. Generally, "[w]hen a superior court determines the law of the case and issues its mandate, a lower court is not free to depart from it." Waste Mgmt of Ohio, Inc. v City of Dayton, 169 F. App'x 976, 986 (6th Cir. 2006). However, "[t]he mandate rule is a specific form of the law of the case doctrine." Id. At its heart, "[t]he basic tenet of the mandate rule is that a [lower court] is bound to the scope of the remand issued by the court of appeals." Id. (citations omitted).

Sunshine points to two sentences in the opinion to support its argument. In discussing whether the cattle leases were true leases or disguised security agreements, the Sixth Circuit stated that "[o]wnership of this herd—in our view—is a significant asset, and thus, we hold that Sunshine retained a meaningful reversionary interest." In re Purdy, 763 F.3d at 521. The opinion also stated that "[i]f the agreements are true leases, then Sunshine has a reversionary interest in [289] head of cattle and is entitled to approximately [$301,000] from the cattle

auction."[1] Id. at 518. Sunshine argues alternatively that the Sixth Circuit impliedly decided the question of ownership because "the ownership issue was a necessary step and it was closely related to the 'true lease' or disguised security agreement distinction." (Sunshine Brief [DN 7] at 16.) Overall, Sunshine contends that since the Sixth Circuit determined that the leases were true leases, "it logically follows that it resolved the ownership issue as well." (Id.) Therefore, according to Sunshine, the Bankruptcy Court erred when it held an evidentiary hearing regarding the ownership of the cattle sold at auction.

The Court disagrees. The Bankruptcy Court stated that the purpose of the hearing was to determine "ownership of the cattle on the Debtor's dairy farm at the time of the auction and whether any of the cattle sold were owned by the Debtor, if so, how many and whether any of the cattle were under lease from Sunshine and if so, how many." In re Purdy, 2015 WL 5176580, at *3. The question presented to the Sixth Circuit was "whether these 'Dairy Cow Leases' are true leases or disguised security agreements." In re Purdy, 763 F.3d at 519. Although the Sixth Circuit looked to the lease terms to determine whether Sunshine owned the cattle subject to the leases and whether it retained a meaningful reversionary interest in the cattle, it did not determine that the cattle which were sold at auction were owned by Sunshine and subject to the Dairy Cow leases. The Court believes the second sentence referred to above was simply the circuit court restating the position of the parties. Therefore, the Court finds that the Bankruptcy Court did not violate the mandate rule by holding an evidentiary hearing to determine who owned the cattle that were auctioned.

---

[1] The figures reflected in the Sixth Circuit's original opinion were later adjusted to approximately $301,000 because only 289 of Sunshine's cattle were actually found to be on Purdy's farm at the time of the auction. (Sunshine's Brief [DN 7] at 15.)

4

**B. Ownership of the Cattle**

The Bankruptcy Court determined that the issue before it was "whether the 415 head of cattle sold at the auction by the Trustee were cattle subject to the Dairy Cow Leases or whether the cattle were owned outright by the Debtor and subject to CFB's security interest." Id. at *6. Judge Lloyd held an evidentiary hearing on July 14, 2015 in which she heard testimony from Purdy, Jeff Blevins of Sunshine, cattle farmers involved in the various transactions, including Kendall Branstetter and Danny Layton, CFB representatives, and the auctioneer, Bill Chase. In re Purdy, 2015 WL 5176580, at *3, *6–*10, *14. Ultimately, the Bankruptcy Court determined that the cattle sold at auction were not subject to the Dairy Cow Leases.

Sunshine first challenges the Bankruptcy Court's decision by arguing that it made several errors of law with respect to the application of KRS 253.060, the branding statute. However, even if Sunshine is correct as to the legal application of the branding statute, the Bankruptcy Court made clear that it found the Debtor's testimony sufficient to rebut any prima facie evidence presumed by the statute. At the time of the auction 289 out of 415 cattle bore two indicia of ownership: Sunshine's brand and CFB's white ear tags. Id. at *10. Clearly these cattle were branded mistakenly, tagged incorrectly, or a combination of both. Purdy testified to "over branding" the cattle and branding regardless of ownership. Id. at *9–*11. Because of the systemic uncertainty, the Bankruptcy Court determined that the branding and tagging evidence was inconclusive and "not probative" of ownership. Id. at *10, *14–*15. The Bankruptcy Court had the opportunity to weigh the evidence and judge the credibility of the witnesses in order to make this determination. Its findings were not clearly erroneous.

The Bankruptcy Court examined the evidence relating to the transactions of each Dairy Cow Lease. The Bankruptcy Court and the parties exerted a great deal of effort discussing

whether the bank's security interest attached to cattle despite the fact that the cattle were subject to the Dairy Cow Leases. Sunshine obviously argued that the since the Sixth Circuit had determined its leases were "true leases", CFB's security interest did not attached to the cattle subject to those leases. However, the bankruptcy court was persuaded by the fact that "the cattle were delivered to Debtor's farm, incorporated into his operation and were being fed, cared for and producing milk before Sunshine even had a signed lease with the Debtor" and that "in some instances, third parties provided the cattle to Debtor and Debtor was the party actually providing the funds for the initial purchase of the cattle, funds which came out of the CFB account and constituted its collateral." Id. at *12. The court concluded that Purdy "acquired rights in the collateral at the time funds were used out of the CFB account for their purchase, regardless of the fact that the funds were later reimbursed by Sunshine." Id. at *14. The attachment was effective because of "Debtor's rights of ownership and control in the collateral." Id. The Bankruptcy Court concluded "that based on the testimony of record regarding how the cattle were purchased, as well as how the replacement cattle were purchased, CFB's security interest attached to all of these cattle before Sunshine ever acquired any rights in the cattle." Id.

The Bankruptcy Court relied on several cases that stand for the proposition that it is "the 'outward appearance of the Debtor's rights of ownership and control in the collateral that determines whether attachment of the security interest is effective and not the rights of the party who may have title to the collateral,' as the determining feature in rights in the collateral." In re Purdy, 2015 WL 5176580, at *12 (quoting Brown, 622 F. Supp. at 1050). Additionally, the Bankruptcy Court found persuasive several cases in which Purdy had "sufficient rights in collateral for a security interest to attach, where the Debtor maintained the collateral, cared for

the collateral and profited from its use." Id. (citing In re Webb, 520 B.R.748 (Bankr. E.D. Ark. 2014); In re Williams, 208 B.R. at 885; Hubbard, 382 S.W.3d at 726).

The Court agrees with the Bankruptcy Court's findings with respect to those instances in which Purdy purchased the cattle himself and the cattle were delivered to his farm long before a lease was executed. However, there were instances in which Sunshine bought the cattle, not Purdy. There is support for an argument that at least in those cases, the bank's security interest would not attach since Purdy had no rights in the cattle. While the Court is inclined to agree with Sunshine on this point, the reality is that this discussion is purely academic because the Bankruptcy Court ultimately found that all of Sunshine's cattle had been sold long before the auction.

The Bankruptcy Court credited Purdy's testimony by stating "Debtor testified that at the time the Petition was filed, all cattle under the Sunshine Leases had been sold. This makes sense considering the testimony that Debtor sold approximately 250 head of cattle between September and November 2012." Id. Sunshine argues that this was in error; however, it was well within the Bankruptcy Court's discretion to weigh the evidence and credibility of the witnesses. Jones v. Simon, No. 5:13-CV-00161-TBR, 2014 WL 3695818, at *2 (W.D. Ky. July 24, 2014).[2] The Bankruptcy Court found that "[b]y July and August of 2012, Purdy estimated there were approximately 750 head of cattle on the farm. At a predictable, industry cull rate of

---

[2] The Bankruptcy Court determined that both parties bore an equal burden on establishing ownership of the cattle auctioned. In re Purdy, 2015 WL 5176580, at *11. A movant in a contested matter must prove his case by a preponderance of the evidence. In re Transamerican Natural Gas Corp., 978 F.2d 1409, 1416 (5th Cir. 1992). A preponderance of the evidence is defined as "the greater weight of the evidence . . . sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Preponderance of the Evidence, Black's Law Dictionary (10th ed. 2014). The preponderance is found with the party demonstrating the stronger evidence, "however slight the edge may be." Id. Sunshine argues that CFB did not carry its burden because it presented no evidence as to the ownership of the cattle but that Sunshine carried its burden because it had its brand to evidence ownership. The Bankruptcy Court found the branding evidence to be unreliable and did not consider it probative evidence. In re Purdy, 2015 WL 5176580, at *11. Instead, the court relied on Purdy's credible testimony to render its decision. Id. at *11, *14. Therefore, despite Sunshine's argument to the contrary, because Sunshine's evidence was determined to be unreliable and CFB presented credible evidence (Purdy's testimony), the Bankruptcy Court's determination that CFB carried its burden of proof was not clearly erroneous.

approximately 30%, he culled and replaced approximately 200 head—all bought with checks written on the CFB account." In re Purdy, 2015 WL 5176580, at *10. And, "[b]etween September and November[] 2012 he sold approximately 250 head, most of which had the [Sunshine] brand." Id. Due to these massive sales in 2012, the Bankruptcy Court found Purdy's statement that no Sunshine cattle remained on the farm at the time of the auction credible and persuasive, noting that Purdy's conclusion "makes sense" considering these sales. Id. at *14.

The question at the end of this case is whether any of the cattle sold at auction were owned by Sunshine. The Bankruptcy Court determined that none were. These factual findings regarding the nature and number of the cattle on Purdy's farm at the time of the auction are to be reviewed under "the 'clearly erroneous' standard of review, giving due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." Jones, 2014 WL 3695818, at *2 (citation omitted). Thus, "[a] finding is 'clearly erroneous' when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Without "most cogent evidence of mistake or miscarriage of justice," a bankruptcy court's findings of fact should not be disturbed. In re Caldwell, 851 F.2d 852, 857 (6th Cir. 1988).

Accordingly, this Court must affirm the Bankruptcy Court's decision that "net sales proceeds, exclusive of all costs associated with the sale and care of the cattle sold, totaling $402,354.54 are awarded to Citizens First Bank." Id. at *16.

### IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is **AFFIRMED**.

cc: counsel of record
    Hon. Joan A. Lloyd, U.S.B.C. Judge

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 15, 2016